# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James F. Holderman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 03 C 5076 | DATE | August 5, 2004 |
| CASE TITLE | DOE vs. TEMPLETON et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Pursuant to Memorandum Opinion and Order entered this day, defendants' motion for partial summary judgment is granted. Summary judgment is granted as to counts II and III and with respect to plaintiff's claim for punitive damages in count I. All previously set dates shall stand.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| ✓ | Notices mailed by judge's staff. | | AUG 0 6 2004 | |
| ✓ | Notified counsel by telephone. | | date docketed | 50 |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| ✓ | Copy to judge/magistrate judge. | CLERK | | |
| JS ✓ | courtroom deputy's initials | 2004 AUG -6 AM 8:01 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Jane Doe,

    Plaintiff,

v.      No. 03 C 5076

Ed Templeton and Tum Yeto, Inc., d/b/a Toy
Machine Bloodsucking Skateboard Co.

    Defendants.

DOCKETED

AUG 0 6 2004

## MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

On October 15, 2003, plaintiff Jane Doe ("Doe") filed a four-count amended complaint against defendants Ed Templeton ("Templeton") and Tum Yeto, Inc., d/b/a Toy Machine Bloodsucking Skateboard Co. ("Tum Yeto" or "Toy Machine") alleging violations of the Illinois Right of Publicity Act, invasion of privacy by giving publicity to private life, intentional infliction of emotional distress ("IIED"), and negligence. Defendants, on May 6, 2004, moved, pursuant to Federal Rule of Civil Procedure 56, for summary judgment on count II (publicity given to private life) and count III (IIED) and plaintiff's punitive damages claims. For the reasons set forth below, defendants' motion is granted.

## STATEMENT OF FACTS

In June 2002, at a skateboarding event in Naperville, Illinois, Templeton, a professional skateboarder, approached plaintiff and her friend, who were nearby, and asked them if he could take
1



their photograph. Plaintiff alleges that Templeton told the two friends that he was Tony Hawk, another professional skateboarder. Plaintiff and her friend gave Templeton permission to take their photograph. Templeton subsequently took plaintiff and her friend's photograph.

Then, in February 2003, Toy Machine used the photo of plaintiff and her friend that Templeton took in June 2002 in an advertisement publicizing the release of a videotape entitled "Sucking the Life," which documents the then-recent tour of the Toy Machine skateboarding team. This advertisement with plaintiff's photograph was published in the February 2003 edition of Thrasher magazine. The advertisement with the photograph of plaintiff and her friend contains several lines of text promoting the videotape and names the skateboarders on the tour. At the bottom of the advertisement, those interested in ordering the video are instructed to "Write to: I am gay in a happy way not a sexual one" at a Huntington Beach, California address. (Defs.' Exs., Ex. 1 to Ex. F.) In addition to the advertisement with plaintiff's photograph, Toy Machine published two other advertisements promoting the "Sucking the Life" video. These ads, published in the March 2003 edition of Transworld Skateboarding Magazine and in the March/April 2003 edition of Document Skateboard Magazine, contained language virtually identical[1] to the February 2003 edition in Thrasher magazine but used different photographs from the skateboarding tour. In other words, the two advertisements published after February 2003 are practically identical to the February 2003 advertisement but for the photographs used. Both the March 2003 and March/April 2003 editions of the promotion contained the same address, including the "I am gay in a happy way not a sexual one" language, as the advertisement with plaintiff's photograph.

---

[1] The only difference in the text appears to be the release dates. The February 2003 advertisement states: "Hoping for release by March 2003" (Defs.' Exs., Ex. 1 to Ex. F) while the other two state: "New release date: January 2003" (Defs.' Exs., Exs. 2-3 to Ex. F).

2

Plaintiff, who, in January 2003, was twenty-two years old and a seventh grade science teacher in Naperville, is gay. However, at that time, plaintiff had not disclosed her sexual orientation to her employer, colleagues, students, or students' parents. In late February 2003, when a student brought the advertisement to plaintiff at school, plaintiff first learned that the photograph Templeton took of her in June 2002 was used in the Toy Machine promotion. After finding out the advertisement, which plaintiff believes portrays her as gay, was published, plaintiff lost ten to fifteen pounds, which lasted over one year, and suffered a flare up of her eczema, which lasted several weeks. Shortly after the advertisement was published in Thrasher magazine, plaintiff spoke with the principal and vice principal of her school regarding the advertisement. Plaintiff did not discuss her sexual orientation with her principal or vice principal nor has plaintiff had any conversation about her sexual orientation with any teachers, her principal, or vice principal.

Approximately five months later, plaintiff filed this lawsuit against defendants. This was the first time defendants became aware of plaintiff's sexual orientation. Templeton did not know plaintiff is gay when he took her photograph in June 2002. Upon being notified by a Chicago Tribune reporter of the lawsuit and plaintiff's allegations, Todd Swank, president of Tum Yeto, instructed his staff to discontinue any use of plaintiff's image. In addition, Tum Yeto's website administrator, Jordan Snodgrass, removed any image of plaintiff from the Toymachine.com website by deleting the "Sucking the Life" website link from the archives of the "Old Tour Dates" link.

Plaintiff's claims against defendants all center on this February 2003 advertisement and defendants' use of her photograph. Relevant to the counts II and III, plaintiff claims that the ad portrayed her as gay and thus disclosed to the public her sexual orientation.

## STANDARD OF REVIEW

Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in the nonmovant's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). This court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. A party who bears the burden of proof on a particular issue, however, may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). In considering a motion for summary judgment, this court is not required to scour the record in search of evidence to defeat the motion; the nonmoving party must identify with reasonable particularity the evidence upon which that party relies. Johnson v. Cambridge Indus., Inc., 325 F.3d 892, 898 (7th Cir. 2003); Bombard v. Fort Wayne Newspapers, Inc., 92 F.3d 560, 562 (7th Cir. 1996). Finally, the evidence relied upon must be competent evidence of a type otherwise admissible at trial. Stinnett v. Iron Works Gym/Executive Health Spa, Inc., 301 F.3d 610, 613 (7th Cir. 2002).

## ANALYSIS

As an initial matter, pursuant to Local Rule 56.1(b)(3)(A), in order to dispute the moving party's factual assertion, the nonmoving party must provide specific citations to the parts of the record that support the asserted dispute. See Malec v. Sanford, 191 F.R.D. 581, 584 (N.D. Ill. 2000) ("[T]he nonmovant must cite specific evidentiary materials justifying the denial."). Failure to cite

to the record, which plaintiff has done numerous times, results in the fact being admitted.² In addition, this court cannot consider additional facts offered by the nonmoving party that are not supported by specific references to the record.³ L.R. 56.1(b)(3)(B). Finally, this court has disregarded any statement that are speculative (e.g., defendants' paragraph twenty-four) or conclusory (e.g., first sentence of defendants' paragraph fourteen).

I.  Public Disclosure of Private Facts

With respect to plaintiff's invasion of privacy, public disclosure of private facts claim, "[o]ne who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public." Villalovos v. Sundance Assocs., Inc., No. 01 C 8468, 2003 WL 115243, at *3 (N.D. Ill. Jan. 13, 2003) (quoting Restatement (Second) of Torts § 652D (1977)); Johnson v. K Mart Corp., 311 Ill. App. 3d 573, 579, 723 N.E.2d 1192, 1197 (1st Dist. 2000). Here, this court agrees with plaintiff that her sexual orientation is not a legitimate public concern and disclosure could be highly offensive. However, this court finds that material facts are not in dispute as to whether defendants actually disclosed that plaintiff is gay.

It is undisputed that Templeton did not know of plaintiff's sexual orientation when he took her photograph and, in fact, did not learn plaintiff is gay until it was alleged in plaintiff's complaint.

---

² For example, plaintiff fails to provide a citation to the record in response to the following paragraphs of defendants' statement of undisputed material facts: 12, 13, 18 (particularly last sentence), 23, 25, 26, 27, and 28. These paragraphs are thus deemed admitted.

³ In particular, plaintiff does not cite to any record in support of paragraph 16 of her statement of additional facts.

(Pl.'s Resp. to Defs.' Stmt. of Facts ¶¶ 10-11, 18.) Thus, when the advertisement ran in February 2003, defendants did not know of the fact that plaintiff is gay. Further, no reasonable jury could find that the advertisement portrayed plaintiff as gay. The only possible indicia of sexual orientation is the phrase "I am gay in a happy way not a sexual one" in the mailing address at the bottom of the advertisement. When viewed as a whole, this ad in no way reveals that plaintiff is gay. In fact, it is undisputed that defendants could not have revealed this. They did not know, at the time they published the advertisement with plaintiff's photograph, that plaintiff is gay. At most, the advertisement disclosed what plaintiff looked like on that particular day in June 2002, including that she had a cigarette in or near her mouth. Of course, "there is no liability for giving further publicity to what the plaintiff [herself] leaves open to the public eye." Restatement (Second) of Torts § 652D cmt. b (1977). The only way defendants can be held liable here is if their advertisement discloses plaintiff's sexual orientation, and it does not. In fact, even after the February 2003 advertisement was published, plaintiff has never had any conversation regarding her sexual orientation with any teacher, or her principal, or her vice principal. Moreover, defendants used the same address with the same language on two other advertisements. (Defs.' Exs., Exs. 2-3 to Ex. F.) Consequently, defendants were not attempting to single plaintiff out by disclosing her sexual orientation. The address, whether in good taste or not, was used on at least two other ads.

Plaintiff apparently confuses the public disclosure of private facts branch of the invasion of privacy tort with the other branches of the tort. The cases plaintiff cites in support of her claim involve defamation/false light and misappropriate of identity cases. (Pl.'s Resp. at 8-10.) Plaintiff does not cite to any public disclosure of private facts case. Because no material facts remain in

dispute as to whether the fact that plaintiff is gay was disclosed and defendants are entitled to judgment as a matter of law, summary judgment on this count is appropriate.

II.     Intentional Infliction of Emotional Distress

Under Illinois law, to prevail on her IIED claim, plaintiff must prove that: (1) defendants' conduct was extreme and outrageous; (2) defendants either intended that their conduct should inflict severe emotional distress, or knew there was a high probability that their conduct would cause severe emotional distress; and (3) defendants' conduct in fact caused severe emotional distress. Anast v. Commonwealth Apartments, 956 F. Supp. 792, 802 (N.D. Ill. 1997); Johnson, 311 Ill. App. 3d at 580, 723 N.E.2d at 1197. To survive summary judgment, plaintiff must demonstrate that material facts are in dispute as to each of these elements. Viewing the evidence in the light most favorable to plaintiff, this court finds that material facts are not in dispute.

Even accepting all of plaintiff's facts properly supported by the record, as a matter of law, defendants' conduct was not extreme and outrageous. As the Illinois Supreme Court has held:

> "It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency * * *."

Public Fin. Corp. v. Davis, 66 Ill. 2d 85, 90, 360 N.E.2d 765, 767 (Ill. 1976) (quoting Restatement (Second) of Torts sec. 46, cmt. D (1965)). In reviewing the advertisement (Defs.' Exs., Ex. 1 to Ex. F), as explained above, this court concludes that no reasonable jury could find that it, in and of itself, revealed that plaintiff is gay. Even if such an inference could be made, plaintiff has proffered no evidence that defendants' conduct went beyond all possible bounds of decency.

7

Furthermore, it is undisputed that Templeton did not know plaintiff's sexual orientation when he took her photograph, and defendants did not know plaintiff is gay when they published the February 2003 advertisement. In fact, defendants did not realize plaintiff is gay until they learned such fact was alleged in plaintiff's complaint. (Pl.'s Resp. to Defs.' Stmt. of Facts ¶¶ 10-11, 18.) Additionally, plaintiff offers no evidence that defendants, prior to using plaintiff's photograph in the advertisement, knew anything about plaintiff, particularly her station in life. Even if the advertisement portrayed plaintiff as gay–which it does not–defendants had no knowledge that using plaintiff's photograph would cause her any harm at all, let alone severe emotional distress. Defendants did not know plaintiff was a teacher and therefore could not have known that using plaintiff's photograph would harm her in her job.

Finally, plaintiff has not introduced evidence demonstrating that she suffered *severe* emotional distress. The only evidence supported by citations to the record is that plaintiff lost ten to fifteen pounds lasting over one year and had a flare up of eczema causing her upper lip to be bright red and swollen and her eyelids to be swollen and red for several weeks. Without trivializing these, no reasonable jury could find that such weight loss and flare up of eczema was "so severe that no reasonable person could be expected to endure it." Graham v. Commonwealth Edison Co., 318 Ill. App. 3d 736, 745, 742 N.E.2d 858, 866 (1st Dist. 2000). As such, summary judgment must be granted on this count.

III. Punitive Damages

Although summary judgment has been granted on counts II and III, plaintiff seeks punitive damages on count I. Under 765 ILCS § 1075/40, punitive damages may be awarded if defendants willfully violated the Illinois Right of Publicity Act. This court finds that no material facts are in

dispute as to whether defendants' conduct was willful. Under Illinois law, punitive damages are disfavored and are to be awarded only upon a showing of gross fraud, breach of trust, malice, or willfulness. Roboserve, Inc. v. Kato Kagaku Co, Ltd., 78 F.3d 266, 275 (7th Cir. 1996). To justify punitive damages, defendants' conduct must involve outrage similar to that found in a crime, and plaintiff must introduce some evidence of intent to injure. Id. at 276.

As explained above, plaintiff has offered no evidence of defendants' intent to injure plaintiff. Defendants did not know that plaintiff is gay and did not know of the circumstances of her professional life. In addition, it is undisputed that immediately upon notice of the lawsuit, which was the first time defendants learned plaintiff is gay and that the advertisement was offensive to her, defendants discontinued using plaintiff's image in its publicity and removed any image of plaintiff from their website by deleting the "Sucking the Life" website link from the archives of the "Old Tour Dates" link. (Pl.'s Resp. to Defs.' Stmt. of Facts ¶¶ 23, 26.)

Plaintiff points to defendants' past exploitations of homosexuality as evidence of willfulness. Assuming such evidence is admissible, which it is probably not, this court fails to see how, in light of the undisputed fact that Templeton did not know plaintiff is gay when he took the photograph and when the advertisement was run, this tends to show that defendants willfully used plaintiff's photograph for commercial gain. Here, the evidence shows that although, when viewing the evidence in the light most favorable to plaintiff, Templeton tricked plaintiff by saying he was Tony Hawk, such misrepresentation was undertaken simply to photograph plaintiff and her friend. In Illinois, "deceit alone cannot support a punitive damage award." Roboserve, 78 F.3d at 276 (quoting Home Sav. & Loan Ass'n of Joliet v. Schneider, 108 Ill. 2d 277, 284, 483 N.E.2d 1225, 1228 (Ill. 1985)). Plaintiff offers no evidence of any intent on Templeton's part in June 2002 to trick plaintiff

9

in order to use her photograph in future advertising, i.e., for future financial gain. Then, after using the photograph of plaintiff and her friend, without any knowledge that plaintiff is gay, defendants removed plaintiff's image from the print ads and Toy Machine's website immediately upon learning of the lawsuit. Plaintiff cites to no cases in support of the imposition of punitive damages under circumstances similar to the one at hand. Plaintiff merely cites to four cases that set forth the general standards for willfulness and punitive damages. (Pl.'s Resp. at 11-12.) No reasonable jury could find that defendants' conduct was willful under the circumstances present here. Consequently, summary judgment is appropriate on the issue of punitive damages in count I.

## CONCLUSION

As explained above, defendants' motion for summary judgment is granted. Summary judgment is granted as to counts II and III and with respect to plaintiff's claim for punitive damages in count I. The parties are strongly encouraged to discus settlement. All previously set dates stand.

ENTER:

JAMES F. HOLDERMAN
United States District Judge

DATE: August 5, 2004